## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA SALVATO,                           :
                                        :
        Plaintiff,              :
                                        :        CIVIL ACTION
      v.                       :
                                        :
LIEUTENANT THOMAS SMITH,     :
CAPTAIN JOHN DARBY, and         :
CITY OF PHILADELPHIA,           :
                                        :        NO.    13-2112
        Defendants.             :


## MEMORANDUM

BUCKWALTER, S. J.                                               July 9, 2013

Currently pending before the Court is a Motion by Defendants City of Philadelphia,

Captain John Darby, and Lieutenant Thomas Smith (collectively "Defendants") to Dismiss

Plaintiff's Complaint. For the following reasons, the Motion is denied.

## I.     FACTUAL BACKGROUND

According to the facts set forth in the Complaint,[1] Plaintiff, a Caucasian female, was

hired by the Philadelphia Police Department ("PPD") on June 25, 1995. (Compl. ¶ 11.) She was

promoted to the rank of Detective on December 28, 2005 and assigned to the Special Victims

Unit ("SVU") – Administrative Squad, in February 2006. (Id. ¶ 12.) Her shift in the SVU –

Administrative Squad was seven o'clock a.m. to three o'clock p.m., Monday through Friday. (Id.

¶ 12.) Plaintiff has a daughter, who is presently ten years old, with special needs. (Id. ¶ 13.)

---

[1] On a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6),
the court must accept as true all allegations in the complaint and all reasonable inferences that
can be drawn therefrom, and view them in the light most favorable to the non-moving party.
Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

Plaintiff's supervisors in SVU—Lt. Thomas Smith and Captain John Darby, both white males—were made aware of this situation and of Plaintiff's child care issues. (Id. ¶ 13.) Lt. Smith had transferred into SVU in November, 2010. (Id. ¶ 14.)

In April, 2012, Lt. Smith began making inappropriate comments and harassing Plaintiff by constantly asking why she was away from her desk and calling her names like "gabbygail" and "spankasauras." (Id. ¶ 15.) Plaintiff complained to Capt. Darby about these comments, to which Capt. Darby replied, "I don't deal with personal issues," and he has "Lieutenants to deal with those issues." (Id. ¶ 16.) Thereafter, on April 20, 2012, the PPD hosted an "instructor development" course, which would have allowed Plaintiff to become a Municipal Police Training instructor. (Id. ¶ 17.) Capt. Darby, however, did not let Plaintiff attend this course. (Id.)

The allegedly harassing comments by Lt. Smith continued throughout May, 2012. (Id. ¶ 18.) In June, 2012, Plaintiff received a phone call from her daughter's school, but Lt. Smith would not allow her to take the "personal call" while on duty. (Id. ¶ 19.) According to Plaintiff, other black female officers and white male officers were allowed to take personal calls from children or family while on duty. (Id. ¶ 19.) Plaintiff and Police Officer ("P/O") Andrea Alexander were the only two white females in SVU, and P/O Alexander was retiring in November 2012.

Subsequently, in mid-June, 2012, Lt. Smith began documenting when Plaintiff logged in and out of work, but he did not do this for any other officers in SVU. (Id. ¶ 20.) Around June 14, 2012, Plaintiff asked Lt. Smith to transfer her from the 7:00 a.m. to 3:00 p.m. shift to a steady 8:00 a.m. to 4:00 p.m. shift because of child care issues. (Id. ¶ 21.) She was denied this request

despite the fact that at least one white male and three black females were so accommodated because of child care issues. (Id.) Plaintiff is aware of another white female who was denied a similar request. (Id. ¶ 22.)

On July 4, 2012, Plaintiff was the only female officer assigned to work in the file room boxing documents, which involved heavy lifting. (Id. ¶ 23.) After working in the file room, Plaintiff developed a respiratory infection due to a buildup of mold in the room and called out sick on July 5th. (Id. ¶ 24.) She remained out of work until July 11, 2012, and she had informed Lt. Biello of her illness. (Id.) She also produced doctors' notes upon her return. (Id.) During her six-day absence, however, she was "sick-checked" three times, despite the fact that none of the other officers who had been out for extended periods (all of whom were black) were "sick-checked." (Id. ¶ 25.) Moreover, when she returned on July 11, 2012, Lt. Smith issued Plaintiff a warning letter for violations of Directive #66 (Sick policy), which was placed in her "personnel file" and which would affect her transfer request, promotions, and benefits of employment. (Id. ¶ 26.) In addition, she was not paid for three days of work. (Id.)

Due to her docked pay, Plaintiff filed a grievance with the Fraternal Order of Police ("FOP"). (Id.) Further, on July 16, 2012, she filed a Complaint with the EEO Unit for Lt. Smith's actions of name calling and discriminatory treatment regarding child care issues and monitoring her sick time. (Id. ¶ 27.) The Internal Affairs Bureau ("IAB") conducted an investigation into the allegations, and both Capt. Darby and Lt. Smith were notified about the complaint and investigation. (Id.) Thereafter, on July 25, 2012, Plaintiff was called into Capt. Darby's office and reassigned from administrative squad (5-squad) to 1-squad—a rotating shift working 8:00 a.m. to 4:00 p.m. and 4:00 p.m. to 12:00 a.m. (Id. ¶ 28.) The reason given was

that Plaintiff was "unreliable" and "called out sick" too often, notwithstanding the fact that all of Plaintiff's performance evaluations were satisfactory and did not reflect these complaints. (Id.) Plaintiff grieved the reassignment with the FOP because she was not given adequate notice. (Id.) Notably, Plaintiff still encounters Lt. Smith when working the 4:00 p.m. to 12:00 a.m. shift, but no comments are made between them. (Id. ¶ 28.)

On the same day—July 25, 2012—Plaintiff reported to the Employee Assistance Program because of extreme hardship with her new assignment. (Id. ¶ 30.) Subsequently, on September 24, 2012, Plaintiff submitted transfer requests to Capt. Darby for the following Units: Major Crimes, Criminal Intelligence, and Gun Permits. (Id. ¶ 31.) The requests were submitted to the Transfer Review Board and approved by the Commanding Officers of the respective units, and Plaintiff was thereafter placed on the transfer eligibility list. (Id. ¶ 31.) To date, however, Plaintiff has not yet been approved by the Commission for a transfer. (Id.)

Plaintiff submitted a request, on October 24, 2012, to be moved to the steady "last-out" shift (12:00 a.m. to 8:00 a.m.) (a) for child care reasons; (b) because there were no open day-work positions; and (c) to remove herself from under Lt. Smith. (Id. ¶ 32.) Capt. Darby, however, disapproved her request, on October 31, 2012, due to "staffing" reasons. (Id.) Lt. Albert Rossi allegedly told Capt. Darby that he did not want Plaintiff on his shift. (Id.) Plaintiff believes that this is because Lt. Rossi and Lt. Smith are good friends and that Lt. Rossi had knowledge of Plaintiff's complaints against Lt. Smith. (Id.) Notably, Capt. Darby assigned two officers with less seniority than Plaintiff to the last-out shift—a white male and a black female. (Id.)

On November 5, 2012, Plaintiff filed a complaint with the Equal Employment

Opportunity Commission ("EEOC") alleging violations of Title VII for race and sex discrimination and retaliation for opposing such behavior. (Id. ¶ 33.) Plaintiff has waited the required statutory time and has requested that the EEOC issue her a right-to-sue letter. (Id.)

On December 5, 2012, a memo was dispersed regarding an open position for a "Compstat" officer. (Id. ¶ 34.) Because this was Plaintiff's regular day off, however, she did not get the opportunity to apply for the position, despite being qualified. (Id.) The position was ultimately filed by a black female officer of equal rank as Plaintiff but with less experience. (Id.) Also in December 2012, a memo was dispersed—again on Plaintiff's regular day off— regarding two open positions for officers in the Child Abuse section. (Id. ¶ 35.) The two open positions were ultimately awarded to two white, female officers with less seniority and less experience in Child Abuse than Plaintiff. (Id.)

In January, 2013, Plaintiff was denied overtime for a case to which she was assigned. (Id. ¶ 36.) Capt. Darby then reassigned the case to another investigator, who was a Hispanic male. (Id.) In February 2013, Lt. Smith again threatened to not give Plaintiff overtime for court because the court had not filed out paperwork correctly. (Id. ¶ 37.) This had never been done prior to Plaintiff's complaint with the EEO Unit and with the EEOC. (Id. ¶ 37.)

To date, despite her efforts to complain of their discriminatory, harassing, and retaliatory treatment and to be transferred out of SVU, Plaintiff remains under the supervising authority of Lt. Smith and Capt. Darby. (Id. ¶ 38.) Defendants have failed to take any prompt and appropriate action to remove Plaintiff from her harassers or take any corrective action. (Id.) As a result, Plaintiff has suffered damages in the form of hospitalization for the respiratory infection, loss of sleep for which she needs prescription medication, anxiety for which she needs

medication, increased cost for child care due to working a rotating shift, a permanent disciplinary letter in her personnel file, and loss of three days without pay. (Id. ¶ 39.)

On April 19, 2013, Plaintiff initiated the current federal litigation. Her Complaint sets forth two counts for relief: (1) employment discrimination/retaliation/hostile work environment under Title VII, 42 U.S.C. § 2000e against Defendant City of Philadelphia; and (2) employment discrimination/retaliation/hostile work environment under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951–963 against the City of Philadelphia, Lt. Smith, and Capt. Darby. On May 24, 2013, Defendants moved to dismiss the entirety of the Complaint and Plaintiff filed a Response on June 13, 2013. The Motion is now ripe for judicial consideration.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

6

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

III. **DISCUSSION**

Defendants move to dismiss the entirety of Plaintiff's Complaint on four separate

grounds. First, they assert that Plaintiff has failed to exhaust administrative remedies, thereby requiring dismissal of her Title VII and PHRA claims. Second, they contend that Plaintiff's race discrimination claims must fail because she has failed to plausibly allege an adverse employment action. Third, Defendants argue that Plaintiff has not alleged that she suffered a materially adverse action to support her retaliation claim. Finally, they aver that Plaintiff fails to state a plausible hostile work environment claim.

### A. Exhaustion of Administrative Remedies

Defendant's first argument contends that Plaintiff has not exhausted administrative remedies. It is well-established that a Title VII plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief. 42 U.S.C. § 2000e-5(e); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007). To do so, the plaintiff must "fil[e] a timely discrimination charge with the EEOC." DeLa Cruz, 521 F. Supp. 2d at 431 (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). The purpose of this requirement is "(1) to ensure 'that an employer is made aware of the complaint lodged against him and is given the opportunity to take remedial action,' and (2) to give 'the EEOC the opportunity to fulfill its statutory duties of eliminating unlawful practices through the administrative process.'" O'Donnell v. Michael's Family Rest., Inc., No. Civ.A.07-5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008) (quoting Jackson v. J. Legis Crozer Library, No. Civ.A.07-481, 2007 WL 2407102, at *5 (E.D. Pa. Aug. 22, 2007)).[2] In Title VII actions, failure

---

[2] "Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 491–92 (E.D. Pa. 1999) (citations omitted). "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination."

to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof.  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Defendants now contend that, despite Plaintiff's allegation that she filed a complaint with the EEOC setting forth violations of Title VII and has requested a right-to-sue letter, she has not alleged that she has actually obtained the right-to-sue letter.  Indeed, as noted by Defendants, Plaintiff filed her federal Complaint eight days prior to the end of the 180-day investigatory period and, thus, was not yet entitled to the letter.  Additionally, with respect to Plaintiff's PHRA claims, Defendants assert that Plaintiff has not pled that she filed a complaint with the PHRA. Given this purported failure to plead proper exhaustion of administrative remedies, Defendants contend that Plaintiff's claims must be dismissed with prejudice.

The Court does not find that any of these defects warrant dismissal under Rule 12(b)(6). First, with respect to Plaintiff's filing of the federal lawsuit before the 180-day investigatory period lapsed and the failure to obtain a right-to-sue letter, the Court notes that these are curable defects.  Following the filing of a complaint with the EEOC, a plaintiff must wait 180 days, permitting the EEOC to take action on the complaint. At the end of this 180-day period, the plaintiff is entitled to bring suit, regardless of whether the EEOC proceedings have terminated. Churchill v. Star Enters., 183 F.3d 184, 191 (3d Cir. 1999) (citing Waiters, 729 F.2d at 237).  In order to do so, the plaintiff needs to obtain a right-to-sue letter from the EEOC, which the EEOC must issue upon request once the 180-day period has ended.  McNasby v. Crown Cork and Seal Co., Inc., 888 F.2d 270, 274 n.3 (3d Cir. 1989).  Once the right-to-sue letter is received, the

_____

Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962).

plaintiff has another ninety days in which to initiate a federal lawsuit. See 42 U.S.C. §§

2000e–5(f)(1), 2000e–5(f)(3).

The United States Court of Appeals for the Third Circuit, however, has held that the

issuance of a right-to-sue letter is not a jurisdictional requirement, but rather merely a statutory

requirement. Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir. 1984). As such, it has

remarked that although the letter is a condition precedent to the filing of the federal suit, the

failure to obtain notice of the right to sue is a defect curable at any time during the litigation and

the condition may be satisfied by issuance of the letter after the complaint has been filed. Id.; see

also Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 654–55 (E.D. Pa. 2002); Rhodes v.

SCI-Somerset, No. Civ. A. 06-156, 2007 WL 2406947, at *4–5 (W.D. Pa. Aug. 21, 2007); Riley

v. Del. River and Bay Auth., 457 F. Supp. 2d 505, 509–10 (D. Del. 2006)

In the present case, Plaintiff has attached exhibits revealing that she did not receive her

right-to-sue letter after 180 days and promptly contacted both Karen Ferguson at the Department

of Justice and Elizabeth Wjasow at the EEOC to request issuance of that letter. (Pl.'s Resp.

Opp'n Mot. Dismiss, Exs. B, C.) On June 11, 2013, Ms. Ferguson sent an email to Plaintiff's

counsel indicating that the right-to-sue letter would issue the next day. For purposes of the

present Motion, the Court assumes that that letter has now been received, thereby satisfying the

appropriate condition precedent for filing suit. To now require Plaintiff to amend her Complaint

simply to make the same allegation would serve little purpose other than to delay the progression

of this lawsuit.

As to Plaintiff's alleged failure to cross-file with the PHRC, the Court again does not find

that this warrants dismissal of the Complaint. This Court has previously held that "filing a

charge of discrimination with the EEOC within the 180 mandatory filing period, together with a

request that the EEOC dual-file it with the PHRC, is sufficient to preserve claims under the

PHRA." Seybert v. Int'l Grp., Inc., No. Civ.A.07-3333, 2009 WL 722291, at *17 (E.D. Pa. Mar.

17, 2009). "[N]othing in the PHRA requires a claimant who had already filed at the EEOC to

personally file a second formal complaint with the PHRC." Id. To require such actions by a

claimant would mean that the "cross-filing procedure contemplated by the Worksharing

Agreement would thus be rendered meaningless to the claimant." Id.

In this case, Plaintiff clearly filed her complaint with the EEOC in a timely fashion. (Pl.'s

Resp. Opp'n Mot. Dismiss, Ex. A.) At the end of that Complaint, Plaintiff expressly requested

that the Complaint be dual-filed with the Pennsylvania Human Relations Commission. (Id.) To

the extent the EEOC failed to properly file a Charge, issue a Charge Number, or dual-file with

the PHRC, such errors cannot, under any sense of fairness, be imputed to Plaintiff. Accordingly,

the Court deems Plaintiff's Complaint properly filed with both the EEOC and PHRC and rejects

Defendants' Motion on this ground.

### B. **Failure to Plead Intentional Race Discrimination**

Via an alternative argument, Defendants contend that Plaintiff's claim for race

discrimination under Title VII must fail because she neglects to plead that she suffered an

adverse employment action. The Court finds no merit to this argument.

Title VII of the Civil Rights Act of 1964 provides in relevant part that it is an "unlawful

employment practice for an employer to . . . discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national

origin. . . ." 42 U.S.C. § 2000e-2(a)(1).  In order to proceed on such a claim, a plaintiff must first

establish a prima facie case of race discrimination by showing that (1) he was a member of a

protected class; (2) he was qualified for his position; (3) he had an adverse action taken against

him; and (4) similarly situated individuals who were not members of the plaintiff's protected

class were treated more favorably.  McDonnell Douglas Corp. v. Green, 411 U.S. 793, 802

(1973); see also Kimble v. Morgan Props., 241 F. App'x 895, 897–98 (3d Cir. 2007).  Because

the prima facie inquiry in any case is fact-specific, "[t]he touchstone of the inquiry is whether the

circumstances giving rise to an inference of discrimination are of *evidentiary value,* not whether

they fit into a mechanical formula."  Cobetto v. Wyeth Pharms., 619 F. Supp. 2d 142, 153 n.3

(W.D. Pa. 2007) (emphasis in original).

The only element at issue in this case is the "adverse employment action" element.[3]   It is

well-established that "[a]n adverse employment action sufficient to support a prima facie case

must be 'a significant change in employment status, such as hiring, firing, failing to promote,

reassignment, or a decision causing a significant change in benefits.'"  Sherrod v. Phila. Gas

Works, 209 F. Supp. 2d 443, 450 (E.D. Pa. 2002) (quoting Burlington Indus., Inc. v. Ellerth, 524

U.S. 742, 761 (1998)), aff'd, 57 F. App'x 68 (3d Cir. 2003).  "Such an action 'in most cases

inflicts direct economic harm and requires an official act taken by a supervisor within the

company who has the power to make economic decisions affecting employees under his or her

control.'"  Id. (citing Burlington, 524 U.S. at 762).  The action must be an actual adverse action,

---

[3]  Although the heading for this section of Defendants' Motion appears to set forth a
general argument Plaintiff has failed to plausibly allege any element of her discrimination claim,
the sole element upon which Defendants present any specific argument is "adverse employment
action."  As this Court declines to *sua sponte* make arguments for Defendants, we likewise focus
solely on the adverse employment action element.

"as opposed to conduct that the employee generally finds objectionable." Harley v. McCoach, 928 F. Supp. 533, 541 (E.D. Pa. 1996); see also Geisel v. Primary Health Network, No. Civ.A.07-1548, 2010 WL 3719094, at *7 (W.D. Pa. Sept. 17, 2010) ("[D]iscriminatory conduct other than discharge or refusal to hire is prohibited if it alters an employee's 'compensation, terms, conditions or privileges of employment,' deprives the employee of 'employment opportunities' or 'adversely affects [the employee's] status as an employee.'") (quotation omitted).

Defendants now contend that none of the actions alleged in Plaintiff's Complaint rise to the level of an adverse employment action. Specifically, Defendants discuss: (1) Lt. Smith's calling Plaintiff names like "gabbygail" and "spankasauras" and asking why she was away from her desk; (2) the refusal to allow Plaintiff to take a personal call; (3) the assignment of Plaintiff to the file room for one day; (4) the fact that Plaintiff was sick-checked; (5) the threatened denial of overtime; (6) the denial of transfer to available positions in "Compstat" and the Child Abuse Unit; (7) the reassignment to a different shift; and (8) the issuance of a written warning that was placed in Plaintiff's personnel file. Defendants analyze each action individually to suggest that none of these incidents had any effect on Plaintiff's employment status or benefits and did not implicate the terms of Plaintiff's compensation, conditions, or privileges of employment.

Defendants' arguments, however, are too narrowly focused. At this stage of the litigation, Plaintiff need only make sufficient allegations to plausibly allege that she suffered some type of adverse employment action. To that end, if even one of the aforementioned actions rises to the level of adverse employment action, Plaintiff's case must survive. Plaintiff meets that burden. For example, Plaintiff alleges that she was repeatedly denied transfers to available

positions despite the fact that she was qualified for them. "Although some transfers may not be considered adverse . . . the denial of a sought after transfer is an adverse action." Parker v. State of Del., Dept. of Public Safety, 11 F. Supp. 2d 467, 477 (D. Del. 1998) (internal citations omitted). "This is unsurprising, since Title VII protects against discrimination in hiring, and applying for a job in another division is similar to applying for the same position from outside of the company." Id.; see also Seldon v. Nat'l R.R. Passenger Corp., 452 F. Supp. 2d 604, 609 (E.D. Pa. 2006) ("[F]ailure to transfer an employee to a position to which she was qualified can also constitute an adverse employment action."). Further, Plaintiff claims that she was threatened with a denial of overtime, which could rise to the level of an adverse employment action. Chestnut v. Gen. Motors Corp., No. Civ.A.06-4921, 2008 WL 4093713, at *5 (E.D. Pa. Sept. 3, 2008) ("Indeed, if Defendant had in fact denied Plaintiff overtime its actions would be considered adverse."). Finally, Plaintiff alleges that she had a warning letter placed in her personnel folder. Although written letters of reprimand do not presumptively constitute a material change in the terms or conditions of a plaintiff's employment, Plaintiff has alleged that the warning letter would "effect her transfer request, promotions, and benefits of employment." (Compl. ¶ 26.) Courts have held that such an allegation—made at the motion to dismiss stage and prior to an evidentiary determination of the actual impact of the letter on the employee's terms of employment—could constitute an adverse employment action. Eubanks v. Sunoco Logistics Partners, LP, No. Civ.A.12-1741, 2012 WL 3866961, at *3 (E.D. Pa. Sept. 6, 2012) ("Here, it seems entirely plausible that the filed reprimand could sufficiently impact the terms of [the plaintiff's] employment to constitute an adverse employment action, and that discovery could reveal such an impact. After all, one of the main purposes of keeping a personnel file is to

develop a record on which to base future promotion, transfer, or demotion decisions.");

McLaughlin v. Commw. of Pa., No. Civ.A.98-2686, 1999 WL 58658, at *5 (E.D. Pa. Jan. 25,

1999).("In our District, it has been held that placing disciplinary notices in a personnel file

amounted to an adverse employment action."). Viewing all of these allegations in the light most

favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged an adverse

employment action for her intentional discrimination claim.

## C.       Failure to Plead Claim of Retaliation

Defendants' third argument challenges Plaintiff's claim of retaliation. Title VII's

anti-retaliation provision declares it to be an "unlawful employment practice" for a covered

employer "to discriminate against" an employee "because he [or she] has opposed any practice

made an unlawful employment practice" by Title VII, or "because he [or she] has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"

thereunder. 42 U.S.C. § 2000e–3(a). "To establish a prima facie case of retaliation under Title

VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2)

the employer took an adverse employment action against her; and (3) there was a causal

connection between her participation in the protected activity and the adverse employment

action.'" Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting Nelson v.

Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

As with the foregoing claim, Defendants again allege that Plaintiff has not adequately

alleged that she suffered a materially adverse action in order to satisfy her prima facie case. The

Supreme Court has clarified what constitutes an adverse employment action. Originally, "the

adverse employment action" for a retaliation claim required the same showing as for a disparate

treatment claim.  <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006).  In <u>Burlington N. & Santa</u>

<u>Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), however, the Supreme Court explained "that the

anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory

actions that affect the terms and conditions of employment."  <u>Id.</u> at 64.  Rather, it held that a

plaintiff claiming retaliation under Title VII must show that a reasonable employee would have

found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination."  <u>Id.</u> at 68 (quotation

omitted).

Given this lower standard of what constitutes an adverse employment action in a

retaliation claim, this Court finds that Plaintiff has sufficiently pled this element.  <u>See</u> <u>Seldon</u>,

452 F. Supp. 2d at 609–10 (acknowledging the lighter standard for proving adverse employment

action in a retaliation claim).  As set forth in detail above, Plaintiff has set forth a host of activity,

some of which—if taken as true—would affect the terms and conditions of her employment.

Much of this activity occurred after she filed her original grievance with the FOP, including her

reassignment to a rotating shift, her denials of transfer requests, and her denial of overtime.

Logic then suggests that this same activity could have dissuaded a reasonable worker such as

Plaintiff from making or supporting her charge of discrimination.  Therefore, the Court declines

to dismiss Plaintiff's retaliation claim at this juncture.

### D.  Failure to State a Plausible Hostile Work Environment Claim

Defendants final challenge in their Motion to Dismiss alleges that Plaintiff fails to state a

a plausible hostile work environment claim under Title VII and/or the PHRA.  To establish a

prima facie case of hostile work environment, a plaintiff must show that (1) he suffered

intentional discrimination because of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. See Verdin v. Weeks Marine, Inc., 124 F. App'x 92, 95 (3d Cir. 2005); Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).

Defendants' argument focuses entirely on the second element—pervasive and regular discrimination.[4] Factors which may indicate a hostile work environment include: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Sherrod v. Phila. Gas Works, 57 F. App'x 68, 75 (3d Cir. 2003) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). To establish a hostile work environment, a plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [the victim's] employment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quotation omitted; alterations in original). As such, a plaintiff cannot rely upon casual, isolated, or sporadic incidents to support his claim of hostile work environment harassment. See Howard v. Blalock Elec. Serv., Inc., 742 F. Supp. 2d 681, 692 (W.D. Pa. 2010). While it is possible for a single action to constitute a claim for hostile work environment harassment if the act is "of such a nature and occurs in such circumstances that it may reasonably be said to characterize the

---

[4] Again, because Defendants do not challenge Plaintiff's satisfaction of any of the other elements of a hostile work environment claim, the Court will not speculate as to potential arguments regarding those elements. In turn, the Court offers no opinion as to whether any of the alleged harassment with discriminatorily motivated or whether the harassment was both objectively and subjectively severe.

atmosphere in which a plaintiff must work," generally a plaintiff must show that she was subjected to "repeated if not persistent acts of harassment." Bedford v. Se. Pa. Transp. Auth., 867 F. Supp. 288, 297 (E.D. Pa. 1994). Moreover, conduct that is merely offensive or which has the effect of making an employee's life at work unpleasant or uncomfortable is, without more, not actionable. Harris, 510 U.S. at 21–22. Notably, however, "the advent of more sophisticated and subtle forms of discrimination requires that [the Court] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment in evaluating a hostile work environment claim." Cardenas v. Massey, 269 F.3d 251, 261–62 (3d Cir. 2001).

Without even a cursory mention of the pleadings in this case, Defendants baldly argue that "Plaintiff has not plausibly alleged that she suffered an abusive workplace that was permeated with severe or frequent discriminatory conduct." (Defs.' Mem. Supp. Mot. Dismiss 11.) Plaintiff's Complaint, however, is replete with allegations regarding the hostile conduct she suffered, including: (1) being called names like "gabbygail" and "spankasauras" and being constantly questioned as to her whereabouts (Compl. ¶ 15); (2) denial of training opportunities (id. ¶ 17), (3) refusal to let Plaintiff take a personal phone call (id. ¶ 19), (4) documenting Plaintiff's log-in times, but not doing it for other officers (id. ¶ 20); (5) denial of Plaintiff's request for a steady shift despite being aware of her child care issues (id. ¶ 21); (6) being "sick-checked" while out on sick leave, when no other officers were "sick-checked" (id. ¶ 25); (7) receiving a warning letter in her personnel file (Id. ¶ 26); and (8) denial of transfers to other units. (Id. ¶ 31.)

Although none of the events taken in isolation could be deemed "severe" or "pervasive,"

these same events viewed in conjunction—particularly at this early stage of the litigation—could be deemed to regularly create a humiliating and hostile employment environment. The Third Circuit has made clear that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Abramson v. William Paterson Coll. of NJ, 260 F.3d 265, 276 (3d Cir. 2001) (quotations omitted). Based on the well-pled allegations of the Complaint, the Court must find that Plaintiff has sufficiently alleged severe and regular acts of harassment.

## IV. CONCLUSION

In light of the foregoing, the Court finds no basis for dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has adequately established proper exhaustion of administrative remedies. Moreover, she has set forth allegations that create a plausible showing of adverse employment action for both her discrimination and her retaliation claims, and that she suffered a pervasive and regular hostile work environment. Accordingly, Defendants' Motion to Dismiss is denied in its entirety.